### STATE v. G. W. CANSLER.

If one elected to an office, takes possession of the same, and engages in the exercise of its duties, and misbehaves by taking unlawful and extortionate fees, he will be liable for such misbehavior, and may be indicted therefor, notwithstanding the fact he had failed to take the oath of office.

In an indictment against a Justice of the Peace for taking unlawful and extortionate fees, it was charged that he "unlawfully, corruptly, deceitfully, extorsively, and by color of his office, did extort and receive from,'' &c.: *Held*, that the offence was well charged, and that no advantage could be taken thereof, especially after verdict.

(The case of *Wiley* v. *Worth*, Phil. 171, cited and approved.)

INDICTMENT for *Extortion,* tried at the Spring Term, 1876, of CATAWBA Superior Court, before his Honor Judge FURCHES.

The defendant was charged in the bill of indictment with the taking unlawful fees in his office of Justice of the Peace from one Joshua Hefner.

On the trial below, Hefner himself, introduced by the State, testified that he and his wife had a little difficulty, and that he slapped her in the face; this was in the summer of 1874; that not long thereafter he was at Catawba Station, and the defendant mentioned the difficulty he had with his wife to him, and told him he had better "submit and fix it up;" that it would not cost him much, and for him to bring his wife down; witness and his wife, a few days after this conversation, went down to the station as requested, and saw defendant; that he took them into a counting-room and had a little chat, and then told witness it would cost him three dollars; the defendant then made a memorandum on a piece of paper, and wrote a receipt for three dollars; that he (the witness, Hefner) had only two dollars, which he paid to the defendant, who gave the witness the receipt for three dollars, telling him that he (the

defendant) would advance the other dollar, and that the witness could hand it to him some other time.

The receipt, which was for three dollars, " in full of costs in a matter of Joshua Hefner and wife," dated 4th September, 1874, was introduced as evidence. and read.

The Solicitor then asked the witness if the defendant was a Justice of the Peace ?   To this question it was objected, on the ground that, if the defendant was a Justice of the Peace, it was a matter of record, and as such must be proved.   The record of the Board of County Commissioners was then introduced, whereby it was shown that the defendant had been elected as a Justice of the Peace of Catawba county, at the August election in 1874, and that he had qualified as such before the Board of Commissioners.   There was no evidence of the defendant's ever having taken the oath of office before the Superior Court clerk.

There was no evidence offered for the defence.   The defendant, however, asked his Honor to charge the jury that he was entitled to acquittal at their hands for the following reasons : (1.) That the bill of indictment was defective in this, that it did not charge the act to have been done *wilfully*.   (2.) That to make the defendant a Justice of the Peace, he must have qualified before the Clerk of the Superior Court, and, as there was no evidence that he had done so, they should acquit on that account.   (3.) That the jury must be satisfied beyond a reasonable doubt of the defendant's guilt before they could convict.

His Honor declined to give the first and second instruction asked for, and charged the jury that to make the defendant guilty they must not only find that he took fees that did not belong to him, but they must also find that he knew at the time he took them that they did not belong to him ; that if he took the fees that did not belong to him through ignorance, thinking that such fees rightly pertained to his office, that would not make him guilty.   One of the

rules of evidence governing criminal trials was that the jury must be satisfied beyond a reasonable doubt; that was a rule they should try themselves by, and say whether the defendant was guilty or not, applying the facts as proved to the law as given them by the Court

The jury returned a verdict of guilty. Rule for a new trial; rule discharged; judgment, and appeal by defendant.

*Armfield & Folk*, and *M. L. McCorkle*, for defendant.
*Attorney-General Hargrove*, for the State.

READE, J.   There can be no doubt that if one elected to an office takes possession of it, and engages in the exercise of its duties, and misbehaves as in this case—take unlawful and extortionate fees—he will be liable for such misbehavior, notwithstanding the fact that he failed to take the oath of office.   The Legislature evidently so understood it, because for going into the office before taking the oath the statute subjects him " to a penalty of $500, and ejection from office by proper proceedings for that purpose."   Bat. Rev., chap. LXXIX, sec. 4.   But how can he be ejected *from* unless he is already *in* the office?   And again: "Any person presuming to execute the office of Justice of the Peace without qualifying as herein directed shall be guilty of a misdemeanor."   Bat. Rev., chap. LXIII, sec. 1.

Here it is contemplated that he may be in office and executing the duties without having qualified; and that is made a misdemeanor.   And it would be strange if one who is in office and exercising the duties thereof, could excuse himself for committing a crime in the manner of exercising the duties, by showing that he had committed another crime *in getting into* the office.

In *Wiley* v. *Worth*, Phil. 171, Wiley claimed his salary of the rightful government after the war, upon the ground that although he had been in the office of Superintendent

Kyle *v.* Mayor and Commi'rs of Fay. and Mallett, Tax Collector.

of Public Instruction under the Confederacy, yet he had not taken the oaths, and was entitled to hold under his old election before the war. But we held that his taking or not taking the oaths, under the Confederacy, made no difference, that he was in office under the Confederacy, and that his neglect of duty in not taking the oaths, did not avail him; and that he was not entitled to his salary out of the rightful government.

There was a motion in arrest of judgment, for that the indictment did not charge the act to be done " wilfully."

The charge is, that he " unlawfully, corruptly, deceitfully, extorsively, and by color of his office," &c. We think that sufficient, at least, after verdict. It is entirely inconsistent with his having done it by mistake or ignorance or in any other manner indicating innocence.

There is no error. This will be certified.

Per Curiam.                                    Judgment affirmed.