THE STATE v. A. J. PRITCHARD.

*Bribery—Extortion—Evidence—Intent —Indictment — Officer— The Code,* § 1090.

1. Bribery consists in the offering or receiving of any unlawful present or reward to or by any person in order to influence his conduct in the exercise of any public duty.

2. Extortion consists in the unlawful taking of money or other thing of value by an officer, under color of his office, when there is nothing due, or more than is due, or before it is due.

3. In indictments for both bribery and extortion, it is essential to allege, and, upon the trial, to prove, that the act charged was done with a wilful and corrupt intent.

4. It is also necessary, in an indictment for extortion, to charge, and, upon the trial, to prove, that the unlawful fees were demanded "under color of office."

5. The statute (*The Code,* § 1090) creates two offences.   In an indictment for either, it is necessary to allege, and, on the trial, to establish, the fact that the accused officer was required to take an oath of office before entering upon his duties; and, for a violation of the latter clause, it is necessary to aver in the indictment, and prove upon the trial, a corrupt intent.

This was a CRIMINAL ACTION, tried at the Spring Term, 1890, of the Superior Court of BERTIE County, before. *Arm-field, J.*

The defendant pleaded not guilty to the indictment, which was as follows:

"STATE OF NORTH CAROLINA, ⎱ Superior Court,
      Bertie County.           ⎰           *Fall Term, 1889.*

The jurors for the State, upon their oath, present—·

That on the 28th day of October, A. D. 1889, one A. J. Pritchard, late of the county of Bertie, being then a Justice of the Peace in and for the aforesaid county, duly and legally appointed and authorized to discharge the duties of that office,

did, on the said 28th day of October, 1889, at and in said county, issue in the name of the State of North Carolina, and directed to any lawful officer of said county, a warrant for the arrest of the person of one Virginius Spry, which said warrant was made returnable before him, the said A. J. Pritchard, as a Justice of the Peace of the aforesaid county, at his office in the town of Windsor, upon a day to the jurors unknown; and the said A. J. Pritchard, not regarding the duties of his said office of Justice of the Peace, but perverting the trust reposed in him, and contriving and intending the citizens of this State, for the private gain of him, the said A. J. Pritchard, to oppress and impoverish, and the due execution of justice as much as in him lay to hinder, obstruct and destroy, did, on the aforesaid day, at and in the aforesaid county, wilfully, corruptly and extorsively take, receive and accept from one E E. Smith, for and on behalf of the defendant in the said warrant of arrest, to-wit, the said Virginius Spry, a certain sum of money, to-wit, one dollar, as an inducement in consideration for the dismissing of the aforesaid warrant of arrest against said Virginius Spry; and in consideration of said sum of money so paid and received as aforesaid, the said A. J. Pritchard, Justice of the Peace as aforesaid, did wilfully and corruptly neglect and omit to bring to trial the aforesaid Virginius Spry, as of right, and according to his duty as Justice of the Peace as aforesaid, he ought to have done, and did not try the said Virginius Spry on the said warrant of arrest, but suppressed the same, against the duties of his said office, to the great hindrance of justice, and against the form of the statute in such case made and provided, and against the peace and dignity of the State."

In support of the indictment the following evidence was introduced by the State:

C. L. Grant: "On the 28th day of October, 1889, I was constable. The defendant gave me a warrant against Vir-

ginius Spry for an assault and battery on Mike Heffron. He was then a magistrate and Mayor of Windsor. I took it and went to arrest Spry, and did not find him. In about two weeks after that I saw Spry, who told me the matter had been settled—that Smith had paid the costs. I saw the defendant and told him what Spry said, and the defendant said that was true; that Smith had paid the costs and fine, and that he had forgotten to recall the warrant. He then paid me my cost—one dollar. One dollar was my legal fee. The defendant said he thought it best to settle it that way, as Mr. Smith said it would cause great inconvenience to have his boat stopped. Spry worked on the boat. The defendant said he had collected fifty cents for the State. He said he had neither charged nor taken anything for himself."

E E. Smith: "The defendant had a warrant out for Spry, a hand on my boat. I saw him and told him that Spry had directed me to settle the matter; that I did not want Spry brought to town off the boat, as it would entail a great expense in stopping the boat. He refused to settle the matter. After talking with him awhile, and going with him to a lawyer's office and taking advice, the defendant said he would dispose of the case; that he would take no fee for himself, but as the constable had been there twice he ought to be paid, and he would take one dollar and a half—one dollar for the constable for making the arrest, and fifty cents fine for the State. * * * Spry was mate on my boat. I told the defendant that Spry had asked me to settle the matter, as I did not want the boat stopped. He went with me to see a lawyer, and consulted with him before he would agree to dispose of the matter that way. He took no costs or fee or anything for himself, but steadily refused to take anything. He took fifty cents for the State. I took a receipt and gave it to Spry."

It was admitted that the defendant was a Justice of the Peace. There was no other evidence offered by the State.

The defendant testified: "I issued a warrant for Spry, at the instance of Heffron, for an assault, and gave it to the constable. It went on for a time, and the constable said that he could not find Spry. I told him to keep the warrant and be on the lookout for him. Soon after that E. E. Smith came to me and said Spry wanted him to settle the case against him. I declined to do so. Mr. Smith represented that if Spry was brought to town it would stop his boat and interfere with his business, and importuned me to settle it. I told him I thought the matter could not be settled that way, and he asked me to go with him and consult a lawyer about it. I did so. After awhile, on the advice of counsel and considering that I had heard from Heffron all of the evidence in the case, I did what I would have done if Spry and Heffron had both been there. I imposed on the defendant Spry a fine of fifty cents. I refused and did not take any fee for myself. I collected one dollar and fifty cents, and paid the constable one dollar for making the arrest and fifty cents I paid to the Sheriff of the county, and I entered the case on my docket as disposed of in that way. I entered it upon the docket the same day. I told Mr. Grant about it four or five days afterwards. I thought I was acting lawfully. I took advice to that effect. I did not take or receive anything for myself."

W. L. Williams testified for the defence: "I was present at the time spoken of by Mr. Smith. Mr. Smith and the defendant came into my office and there was a great deal of talk. Smith said there was a warrant out for Spry. He appealed to the defendant not to stop his boat. The defendant refused to dispose of the case. I told him if he had looked into the case and was satisfied that it was a trivial affair, that he had a right to fine him and stop the case. After repeated refusals he finally disposed of the case by taking, I

STATE *v.* PRITCHARD.

think, one dollar and fifty cents.  Smith offered to pay the defendant his fees, but he refused to receive anything for himself.  \* \* \* The defendant refused to take anything for himself, but did impose a fine for the State and a fee for the constable.  I am a practicing attorney in the Courts of this State."

There was no other testimony offered in the case.

The defendant requested the Court to charge—

1. To find the defendant guilty the jury must be satisfied from the evidence that he acted in bad faith and from a corrupt motive in disposing of the matter as he did.

2. The defendant Spry had a right to waive arrest and attendance before the Court and appoint an agent or attorney to settle the matter for him, and if the defendant did no more than impose a fine ánd costs within his jurisdiction as a magistrate, he would not be guilty unless he was acting in bad faith and from a corrupt motive.

3. The conduct of the defendant in refusing to take any fee for himself, if that were so, and his taking the advice of counsel, if he did take counsel, were both facts going to show that the defendant acted in good faith, and if he did so act he would not be guilty.

4. Unless defendant took money or something for himself or secured some advantage by his acts, then he would not be guilty.

5. Unless the defendant extorted the money from Spry by virtue of his office he would not be guilty.  If it was paid voluntarily by Spry it could not be extortion, but it would be receiving a bribe, and to find the defendant guilty the the jury must find that he took a bribe corruptly.

6. If the defendant acted as a prudent and cautious man would be reasonably expected to do, and honestly, then he would not be guilty.

7. If the jury believe that the defendant took the money honestly, and reasonably thinking he had a right to do so, he would not be guilty.

The Court declined to give these instructions, and charged the jury that if the defendant took the money for himself or anyone, knowing at the time that the warrant had not been executed, the jury will find him guilty. The defendant excepted.

After conviction, the defendant moved in arrest of judgment for defects in the bill of indictment. This motion was refused, and the defendant excepted.

The judgment of the Court was that the defendant be removed from his said office of Justice of the Peace for Bertie County, and pay a fine of twenty-five dollars and be imprisoned in the common jail for ten days. From which judgment the defendant appealed.

*The Attorney General,* for the State.
*Mr. D. C. Winston,* for defendant.

AVERY, J.—after stating the case as above: The Judge who tried the case below evidently acted upon the idea that the indictment was sufficient as a charge of extortion. This offence is defined to be the unlawful taking by an officer (*de facto* or *de jure*), by color of his office, from any person, any money or thing of value that is not due, or more than is due, or before it is due. 1 Bish. Cr. Law, § 573; 4 Bl. Com., 141; *People* v. *Whaley,* 6 Cowen (N. Y.), 661; *State* v. *McEntyre,* 3 Ired., 171; *State* v. *Cansler,* 75 N. C., 442.

In order to prove this charge, it is necessary to show that the fees were demanded wilfully and corruptly, and not through any mistake of law or fact. 2 Bishop's Cr. L., §§ 396, 399 and 400; Roscoe's Cr. Ev., marg. p. 833, and note; *Commissioners* v. *Shed,* 2 Mass., 227; *Cutler* v. *State,* 36 N. J. (7 Vroom), 125; *People* v. *Whaley, supra; State* v. *Cansler, supra.* While the rulings of the Courts have been somewhat conflicting upon this point, the weight of authority, as well as

reason, lead us to the conclusion that all officers, and espe-
cially those who are acting judicially, have a right to demand
that a jury shall pass upon their intent in taking the fees,
and find that the act was wilful and corrupt, before they can
be lawfully convicted of this serious charge. The words
"under color of his office" imply that the officer has taken
advantage of his position and corruptly used the relation
that he sustains to the government to drive others to submit
to his exactions. 1 Bishop's Cr. Law, § 587.

We find, upon examination, that, in the two cases cited
by the Attorney General from the Tennessee Reports (*State*
v. *Critchett*, 1 Lea, 271, and *State* v. *Merritt*, 5 Sneed, 67), the
Court was considering indictments framed under a section
of the Code of that State, the substance of which is set out
in one of the opinions. In the case of *Coates* v. *Wallace*, 17
Sergeant & R., 75, the Supreme Court of Pennsylvania, too,
construed a statute giving a penalty for taking fees not due,
or more than was due.

We think that the Court erred in refusing to submit the
question of intent to the jury, if the indictment cannot be
sustained as a charge of some other offence than extortion at
common law, or even if it is sufficient as a charge of the
offence created by the last clause of section 1090 of *The Code.*

It seems essential, too, that it should be charged in the
indictment, as well as proven on the trial, that the money
was taken "under color of office" All of the definitions
and all of the approved precedents of indictments for extor-
tion at common law contain the words "under color of his
office." 2 Wharton's Cr. Law, § 1576; 2 Wharton's Prece-
dents of Indictments, Form. 902; *State* v. *Bisaner*, 97 N. C.,
503: Archbold's Cr. Pl., 438; Bishop's Cr. Procedure, §§ 320,
321; *State* v. *Cansler*, 75 N. C., 442; 2 Bishop Cr. Law, 393;
*People* v. *Whaley, supra; Rex* v. *Boines*, 6 Mod., 192; *Run-
nells* v. *Fletcher*, 15 Mass., 525.

But it was suggested by the Attorney General that the indictment could be sustained under section 1090 of *The Code*, which creates two distinct offences, one of which is a misdemeanor, punishable at the discretion of the Court (by fine or imprisonment in the common jail not exceeding two years, or by both), while a person convicted of the other, the corrupt violation of his oath of office, must also be removed from office. If the indictment is sufficient under the last clause of said section, then it was proper to charge, and it was necessary to prove, the corrupt intent, and it would follow, as in a trial for extortion at common law, that it was error to refuse to allow the jury to pass upon the motive of the defendant. But it is not necessary to discuss the question whether the testimony would have warranted a conviction of the misdemeanor created by the first clause of said section, because it is of the essence of either offence described in said section that it should be charged and proved that the accused officer was required by law to take an oath of office before entering upon the discharge of his duties. If the indictment had been drawn so as to properly charge the misdemeanor under the first clause, some grave questions would have arisen as to the sufficiency of the evidence to justify a conviction, and it would have been also necessary to modify the judgment. We have not deemed it proper to follow the argument of counsel, and pass upon all of the various questions presented. It is not necessary that we should determine whether the receipt of money voluntarily tendered by a person other than Spry, who was amenable under the indictment pending before the defendant's Court, and supposed to be to some extent under the power of the latter, would constitute the offence of extortion at common law, if properly charged. We omit to pass also upon the question whether Smith, the employer, could lawfully tender a submission for his servant at all, or, if at all, before Spry had been arrested. It was suggested, also, that the

indictment might be sustained as a charge of bribery at common law. Bribery is the voluntary giving or receiving of anything of value in corrupt payment of an official act done or to be done 2 Bishop Cr. Law, § 85 and note. The distinction between bribery and extortion seems to be that the former offence consists in offering a present or receiving one, the latter in demanding a fee or present by color of office. So, in indictments for bribery, too, it seems that it must be charged that the money was given or received corruptly, and the proof must correspond with the charge. Archbold's Cr. Pleadings, 437, § 6; Bish. Cr. Pr., § 99; Roscoe's Cr. Ev., 343, *et seq.* We conclude, therefore, that the exception of the defendant to the refusal of his Honor to submit the question of intent to the jury should be sustained.

There is error, for which a new trial will be granted.

SHEPHERD, J.—concurring: This case was submitted to the jury entirely upon the ground that the defendant was properly charged with the offence of extortion. I concur in the disposition made of the appeal, for the reason that the indictment does not sufficiently charge such an offence. The facts set forth savor more of bribery or malfeasance in office than of extortion. I do not agree, however, that it is necessary to prove a corrupt intent in all cases of extortion. If an officer takes more fees than are due, or before they are due, by mistake of *fact,* he is excusable; otherwise, where he takes them by mistake of *law.*

Bishop, in his Criminal Law (3d Ed., 2d vol., 385, chap. Extortion), says: "But in these matters, as in others relating to the intent, there is a difference between ignorance of the law and ignorance of fact; though the former does not excuse, the latter, where there is no carelessness, does."

The authorities are conflicting, but I prefer the law as laid down by this Court in *State* v. *Dickens,* 1 Hay., 407: "Every

officer is bound to know what the law is upon the subject of fees to be taken by himself. He cannot excuse himself for taking more than the legal fee by saying he was misled by the rates published, or by the advice of an attorney. \* \* \* If such or the like excuses were admitted it would hardly ever be possible to convict an officer of extortion—he might always contrive to ground his conduct upon misapprehension or improper advice." This case has been frequently cited, with entire approbation, by this Court, notably by PEARSON, J., in *State* v. *Boyett*, 10 Ired., 336 (in which case he quotes the above language), and also by the present Chief Justice in *State* v. *McBrayer*, 98 N. C., 619. It has, I think, been ever regarded as the settled law in North Carolina.

The ill reported case of *State* v. *Bright*, 2 Law Rep., 634, does not necessarily conflict with this view, as the mistake there may have been one of fact, and the Court may also have been influenced by the peculiar form of the verdict. This obscurely reported case, and the very brief and general opinion, ought not to have the effect of overruling the law as carefully laid down in *State* v. *Dickens*, and expressly approved by this Court in the later decisions mentioned.

MERRIMON, C. J.: I concur in what is said by Justice SHEPHERD.

*Per Curiam.*                                                    Error.