THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v*. CHARLES C. CLARK, Appellant.

Crimes — taking unlawful fees — public officers — trial — evidence — erroneous exclusion and reception of evidence — crime not committed unless money is received with wrongful intent — statute broad enough to cover any case where public office is wrongfully used for private gain — offense committed under innocent mistake not included — rule that ignorance of law does not excuse may not be stretched into conclusive presumption of knowledge of law so as to supply element of criminal intent.

1. Where, upon the trial of an indictment charging defendant with taking an unlawful fee as a public officer, in violation of section 1826 of the Penal Law, the jury might upon all of the evidence have drawn an inference of fact that the payment was made and received by defendant as compensation for work done in his official capacity and could also have drawn the opposite inference that it was a payment made for services previously rendered in connection with a proceeding for which it was understood defendant was to receive compensation in addition to his regular salary, it was error to exclude testimony to show that the mayor had agreed upon a larger payment than that fixed by the council. Assuming that the mayor had no power to increase the compensation, if both he and defendant assumed that the power existed, payment made thereafter of the amount allowed by the mayor would, so far as concerns the charge contained in the indictment and the question of fact submitted to the jury, have the same effect as if the mayor had legal right to increase the compensation previously fixed by the council.

2. It was also error to receive testimony tending to show that defendant four years before receiving the alleged unlawful payment, as part of his alleged services to the village, since incorporated as a city,

drew up a contract which may have been illegal or dishonest. It tended to introduce into the case the question of defendant's general character and evidence on that question was not then admissible.

3. In any event a charge which makes payment and receipt of compensation in addition to salary the sole test of guilt is erroneous. Intent to ask or receive payment of compensation that is not lawful must be proved. Such intent is shown only when it appears that a public officer has received something which the law does not permit him to accept.

4. A contention that when the statute is read in the light of its history it becomes evident that it was intended to apply only to bribery cannot be upheld, as such construction would unduly limit its language. The statute was enacted to carry out the purpose of section 2 of article 13 of the Constitution of this State and must be read in connection with that section. Its language is broad enough to cover any case where an incumbent of office wrongfully uses it for private gain and should not be restricted beyond its plain intent. On the other hand, the title of the constitutional provision showing that the prohibited offense is at least analogous to bribery may not be entirely disregarded and courts should not by construction enlarge the language of a statute intended to cover corruption and impure conduct in office so that it will also include offenses committed under innocent mistake, even of law. Nor should the rule that ignorance of the law does not excuse be stretched into a conclusive presumption of knowledge of the law in order to supply the element of criminal intent to do the prohibited act.

*People* v. *Clark,* 215 App. Div. 721, reversed.

(Argued March 3, 1926; decided March 30, 1926.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 13, 1925, which affirmed a judgment rendered at a Trial Term for the county of Nassau, upon a verdict convicting the defendant of the crime of taking an unlawful fee as a public officer.

*Abel E. Blackmar* and *Peter P. Smith* for appellant. The trial court erred in charging the jury that defendant could not lawfully receive from the city anything except his salary, and that it made no difference whether he received the $1,000 from the city or from Cass. (*People*

v. *Fitzgerald*, 180 N. Y. 275.) The court erred in charging on the question of intent and in refusing defendant's requests therefor. (*Queen* v. *Tolson*, 23 Q. B. 168, 177; 2 Bishop on Criminal Law [9th ed.], § 391; *State* v. *Pritchard*, 107 N. C. 921; *Cutter* v. *State*, 36 N. J. L. 125; *People* v. *Kolloch*, 60 Cal. 116; *Triplett* v. *Munster*, 50 Cal. 644; *Commonwealth* v. *Shed*, 1 Mass. 228; *People* v. *Kibler*, 106 N. Y. 321; *People* v. *Werner*, 174 N. Y. 132; *People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 12.) There is no evidence in the case that Clark knew or believed that the $1,000. was paid him for services for the city on the condemnation and two other proceedings. (*Supervisors* v. *Briggs*, 2 Den. 33; *Bank Staten Island* v. *City of N. Y.*, 68 App. Div. 233; *People ex rel. McCabe* v. *Matthies*, 179 N. Y. 251.) The court erred in permitting, over the objection and exception of the defendant, evidence that Clark was concerned in making what was alleged to be an illegal contract between Reynolds and the city. (*People* v. *Fitzgerald*, 156 N. Y. 253; *People* v. *Harvey*, 235 N. Y. 282; Chamberlayne on Evidence, § 3275; *Adams* v. *People*, 9 Hun, 89; *People* v. *White*, 14 Wend. 111.)

*Albert Ottinger, Attorney-General* (*Kenneth M. Spence* and *Robert S. Johnstone* of counsel), for respondent. Corrupt motive is not an element of the offense defined by section 2 of article 13 of the Constitution and section 1826 of the Penal Law. The trial court properly instructed the jury upon the question of criminal intent. (*People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1; *People* v. *Werner*, 147 N. Y. 132; *People* v. *Kibler*, 106 N. Y. 321; *People* v. *D'Antonio*, 150 App. Div. 109, 111; *Shevlin-Carpenter Co.* v. *Minnesota*, 218 U. S. 57; *People* v. *Abeel*, 182 N. Y. 415; *People* v. *Luhrs*, 127 App. Div. 434; 195 N. Y. 377; *People* v. *Perce*, 204 N. Y. 397; *People* v. *Atwater*, 229 N. Y. 303; *People* v. *Foster*, 236 N. Y. 610; *People* v. *Harrison*, 238 N. Y. 348; *People* v. *O'Brien*, 96

Cal. 171; *R.* v. *Asplin,* 12 Cox C. C. 391.) The proof established that the payment to the defendant was for his services rendered as corporation counsel and that he knew that this was the purpose of the payment. (*People* v. *Sutherland,* 207 N. Y. 22; *Board of Supervisors Richmond Co.* v. *Ellis,* 59 N. Y. 620; *People ex rel. Coughlin* v. *Gleason,* 121 N. Y. 631; *Smith* v. *Hedges,* 223 N. Y. 176.) The trial court properly charged the jury that the defendant could not lawfully receive any compensation for services rendered by him as corporation counsel in addition to his salary. (*Board of Supervisors Erie Co.* v. *Jones,* 119 N. Y. 339; *People ex rel. Conine* v. *Steuben Co.,* 183 N. Y. 114; *City of Poughkeepsie* v. *Wiltsie,* 36 Hun, 270; *Matter of McCabe* v. *Aulls,* 123 Misc. Rep. 471; *Cowan* v. *Mayor,* 3 Hun, 632; Throop on Public Officers, § 478.) The court properly excluded evidence concerning an alleged conversation between Cass and the village president. (*Blake* v. *People,* 73 N. Y. 586; *People* v. *Wright,* 133 App. Div. 133; *Neil* v. *Thorn,* 88 N. Y. 270.)

LEHMAN, J. The defendant Charles C. Clark was appointed corporation counsel of the city of Long Beach on June 1, 1922. Section 23 of the charter of that city provides that the corporation counsel " shall when directed by the council prosecute and defend all actions and proceedings by and against the city and every department thereof, and perform such other professional duties relating to said city as the mayor or council may direct," and the same section provides that the corporation counsel " shall receive such compensation for services actually rendered as may be approved by the Council." In another section of the charter (Section 13) it is also provided that the " corporation counsel shall receive such compensation as shall be agreed upon from time to time by the council." The city council fixed the salary of the corporation counsel at the sum of $6,000 per annum and thereafter increased the salary to the sum of $7,500.

In May, 1923, the city council decided that the city should acquire by condemnation proceedings a certain standpipe owned by the Long Beach Water Company and which was needed by the city to complete its water system. On May nineteenth it passed a resolution directing that the " Council, the Mayor and Corporation Counsel * * * take proper proceedings for the purchase through condemnation of said property." The resolution further provided that " Mr. Alvin C. Cass of Long Beach be employed as special counsel to act with the Corporation Counsel Charles C. Clark, in the matter of the condemnation of said standpipe and the lots upon which it is erected, and in any other, further or different litigation that may ensue between the Long Beach Water Company or its successors or assigns and the City with relation to the property, plant or rights of the Long Beach Water Company." Mr. Cass and this defendant thereafter initiated the condemnation proceedings as directed and represented the city in these proceedings, and other litigation that ensued until July 2, 1923. On July 2, 1923, Mr. Cass put in a voucher: " For legal services. To Alvin C. Cass account legal services for acquisition and establishment of .Water Plant, $2,000." Mr. Cass was paid the sum of $2,000 upon this voucher and then gave the defendant a check for $1,000.

These facts are established by documentary evidence and are undisputed. Because the defendant received this check for $1,000 the defendant has been indicted by the grand jury and convicted of the felony of taking unlawful fees as a public officer. Both the People and the defendant agree that section 1826 of the Penal Law (Cons. Laws, ch. 40) applies to the offense charged in the indictment. It provides in part that " a public officer who acts or receives or consents or agrees to receive, any emolument, gratuity or reward * * * except such as may be authorized by law for doing or omitting to do any official act * * * or for having performed or omitted

to perform any act whatsoever directly or indirectly related to any matter in respect to which any duty or discretion is by or in pursuance of law imposed or vested in him or may be exercised by him by virtue of his office or appointment or his actual relation to the matter, shall be guilty of a felony punishable by imprisonment for not more than ten years or by a fine of not more than four thousand dollars or both.'' The defendant's work in connection with the condemnation proceedings of the standpipe was performed by virtue of his appointment as corporation counsel, under resolution of the council passed pursuant to law, imposing upon him duties in the matter. His salary was fixed at $7,500. No statute or even ordinance authorized him to receive additional compensation. Consequently, under a literal interpretation of the statute he has done the forbidden act if the check for $1,000 from Mr. Cass was received by the defendant as additional compensation for these services. The trial justice so interpreted the statute and left to the jury only the question whether Mr. Cass paid and the defendant received the money as compensation solely for services rendered in connection with the condemnation of the standpipe and certain other matters growing out of the same proceeding.

Before we consider whether this interpretation placed upon the Penal Law was correct and whether the issues may be so restricted, it may be well to state briefly the evidence presented and to consider whether even under the issue so restricted, there have been errors in the admission and exclusion of testimony. The evidence of the People is entirely documentary except for the testimony of Mr. Cass. The defendant upon the cross-examination of plaintiff's witnesses who produced and identified documentary evidence, also introduced documentary evidence produced by these witnesses. His counsel also cross-examined Mr. Cass and upon such cross-examination elicited some testimony in his favor.

1926.]        Opinion, per LEHMAN, J.        [242 N. Y. 313]

The defendant rested after the close of the plaintiff's case without producing any witnesses or taking the stand himself.   He does not ask court or jury to disregard as false any testimony produced against him.   No point is made that under our rules of law failure to deny by the accused leads to no inference that denial could not be made. The defendant's attitude is in effect that though the competent testimony against him be accepted as substantially true, the surrounding circumstances show that the check for $1,000 was paid for services previously rendered to the village of Long Beach and was received by him under honest belief that he was legally entitled to ask and accept it.

The defendant was corporation counsel of the village of Long Beach from 1916 until its incorporation as a city and until he was appointed as corporation counsel of the city.   While acting for the village he did considerable work in connection with procuring a water supply. During part of this period he received a fixed salary of $1,500, but it was evidently understood that this salary was not adequate compensation for the work required and that he was to be paid additional compensation.   In October, 1919, a resolution was adopted by the council under which compensation to this defendant and Mr. Cass, who acted with this defendant in these matters for the village of Long Beach, just as he subsequently acted with defendant for the city of Long Beach, was fixed at four thousand dollars.   Even after the city of Long Beach was incorporated, the defendant was paid by the city for services rendered to the village in connection with these water supply matters and these payments together with those made to Mr. Cass aggregate more than the sum fixed by the resolution.   The last of these payments to the defendant was made on April 25, 1923, upon a voucher presented by him which reads: " On account of compensation in re acquisition establishment and development of water plant at Long Beach, $1,500."

At that time, it must be remembered, the proceedings for the condemnation of the standpipe had not been authorized or initiated. These proceedings apparently were made necessary because other efforts to purchase through arbitration were unsuccessful. The defendant was indicted upon a charge of receiving compensation in addition to his annual salary for work done as corporation counsel in connection with these condemnation proceedings and under resolution of May, 1923, to which we have referred above. If the payment of $1,000 was received for services previously rendered in connection with the acquisition of a water supply, then the defendant was not guilty of this offense with which he is charged; if paid and received for services rendered in connection with the condemnation proceedings of the standpipe, then under the charge of the trial justice, the jury was bound to find the defendant guilty.

That issue is extremely narrow. The last previous payment, as stated above, was made to the defendant on April 25, 1923, upon a voucher " on account of compensation in re acquisition, establishment and development of water plant at Long Beach." The payment to Mr. Cass was obtained upon a voucher made July 2, 1923, " account legal services for acquisition and establishment of water plant." If both payments were made for services in the one matter or defendant so believed, then concededly the People cannot succeed. To prove guilt the People must at least show that on April 25, 1923, the defendant understood that he had been paid in full for services rendered to the village in the matter of the acquisition of the water supply and that he received subsequent payment with knowledge that it was intended as compensation for subsequent services beyond the salary which in law fixed the compensation. Mr. Cass testified that he told the defendant that he intended to put in a voucher for $1,500 for his services. The defendant told him in effect that he would claim the same amount as

his compensation. Thereafter Mr. Cass talked to the mayor and asked whether it would be " all right " if each put in a voucher for $1,500, and the mayor replied: " the water fund is low, put in a voucher for $2,000." Thereupon Mr. Cass told the defendant he would put in such a voucher to cover both claims. He did so but the voucher failed to show on its face that it covered anything more than his own claim. According to his testimony this omission was due to mistake either on his part or on the part of his stenographer. There is no evidence to show that the defendant saw the voucher or knew of its form and Mr. Cass testified that he did not.

The defendant now claims that the testimony briefly outlined above is insufficient to show that the payment thereafter made on this voucher was intended to cover only services rendered in connection with the *condemnation of the standpipe* after May 19, 1923, and that the voucher itself finally and conclusively establishes that the payment of July, 1923, like the payment of April, 1923, was made for services " in connection with the acquisition and establishment of water plant " and not merely a single part of the plant. Examination of the testimony convinces us that the form of the voucher submitted by Mr. Cass does not, under the circumstances here presented, show conclusively the purpose for which the city made the payment; it certainly cannot show the defendant's understanding of that purpose. Upon the whole record the jury might have drawn an inference of fact that the payment was made and received by defendant as compensation for work done in connection with the condemnation proceedings only. It could also have drawn the opposite inference that it was a payment made as compensation in general for services rendered in connection with the acquisition of the water supply system for both the village and city of Long Beach and subject perhaps to future adjustment.

21

This was the question submitted to the jury. Intention and understanding of the parties is an important if not indeed the determinative factor in arriving at its answer. The People say the money received could not have been payment for services rendered previously because the compensation authorized by resolution of the village council for such purpose has already been overpaid. The defendant attempted to show that the mayor had agreed upon larger payment. Testimony to show this was excluded. It is now argued that the exclusion was justified because the mayor had no power to increase compensation fixed by the council. We may assume, without deciding, that the mayor had no such power. If both the defendant and the mayor assumed that the power existed, payment made thereafter of amount allowed by the mayor would, so far as concerns the charge contained in this indictment and the question of fact submitted to the jury, have the same effect as if the mayor had legal right to increase the compensation previously fixed by the council. If wrong may be charged against the defendant because of receipt of such payment, it is not the wrong charged against him in this indictment on which the jury has found him guilty. The only charge which he was required to meet and which was tried out was whether he had received compensation " not authorized by law " for services rendered in connection with the condemnation proceedings. Testimony which tended to show that the payment made was intended for other purposes was relevant and should have been admitted. The same considerations should have dictated the exclusion of testimony which tended to show that the defendant in the year 1919, as part of his alleged services to the village, drew up a contract which may have been illegal or dishonest. It is not claimed that right to compensation for services in connection with that contract was ever disputed or that the defendant's conduct in connection with that contract has ever been attacked except

in this action where it was not subject to attack. It tended to introduce into the case the question of the defendant's general character and concededly evidence on that question was not then admissible. It was not relevant or material upon the one issue presented.

We need not now decide whether these errors in regard to the admission or exclusion of evidence would in themselves require a reversal of the judgment for in our opinion the conviction rests upon a fundamental error in the interpretation of the Penal Law. We have referred to these errors in regard to the evidence presented, before we have placed our own construction on the section of the statute under which the indictment has been laid, because they emphasize the narrowness of the issue submitted to the jury. The defendant has acted as a public officer in the village and city where he •resided for seven years. He has been convicted of a felony with all the consequences which follow from such conviction. The jury has decided that he asked for and received compensation for services beyond the amount fixed by the common council. There is no claim or evidence that in the performance of his official duties he was influenced by this payment or that he made payment of this compensation a condition of such performance. It is not claimed and there is no evidence that he used his official position to extort this payment. It was not shown and the jury has not found that the defendant obtained this payment by fraud or deceit or that he knew that the voucher submitted did not show that he claimed compensation for services rendered by him. The trial judge charged repeatedly that the only question which the jury should pass upon is whether the payment was made and received for services rendered in the condemnation proceeding and the other litigation arising out of or connected with that litigation. He refused to charge that " the defendant cannot be convicted unless it is established beyond a reasonable doubt that the amount of compensation fixed by the common

council of Long Beach to be paid to the corporation counsel was intended to cover the defendant's services in the condemnation proceedings between the city of Long Beach and the Long Beach Water Company," and he also refused to charge that " if the defendant received the sum of $1,000 from Mr. Cass and the defendant believed that he had a right to receive the same and did receive it without wrongful and corrupt intent, the defendant cannot be convicted." The sole test of guilt under this charge is whether payment of compensation, in addition to the salary allowed to the defendant, was received for services rendered as part of the duties of his office. Even though the council had power to fix the defendant's compensation, even though it intended and the defendant understood that additional compensation should be made for services connected with this proceeding; even though the defendant may have believed that he had a right to receive this payment and did receive it without wrongful and corrupt intent, the jury were bound to find the defendant guilty of a felony if he received a payment which was not authorized by law. The case presents squarely the question whether under the statute, the stigma of the felon may be placed upon one who has been guilty only of error of judgment or mistake of law.

We may concede that the Legislature may prohibit an act which was otherwise innocent in the eyes of the law and that merely from intent to do the forbidden act, criminal intent must at times be inferred regardless of the motives of the accused and regardless even of whether he knew that the act was forbidden. We have held that a conviction of forgery in the third degree under subdivision 3 of section 514 of the Penal Code, now section 889 of the Penal Law, may be sustained where proof was made that the defendant uttered a letter purporting to have been written by a third person and misrepresenting the sentiments of that person, even though it did not appear that the defendant intended to injure him. (*People*

*v. Abeel,* 182 N. Y. 415.) We have held that a conviction under section 889 of the Penal Law may be sustained upon proof of intentional falsification or unlawful alteration of books without actual intention to defraud. (*People* v. *Anderson,* 239 N. Y. 534.) In these and similar cases the prohibited acts were vicious in their nature and we refused to read into the plain language of the penal statute an unexpressed intention on the part of the Legislature to punish such acts only if they were done with intent to defraud or injure a third party. Criminal and corrupt intent could be inferred reasonably from the doing of the act itself and we could not impute to the Legislature intention to require additional wrongful intent.

In the present case the Legislature has seen fit to prohibit a public officer from asking or receiving or consenting or agreeing to receive any emolument, gratuity or reward for doing or omitting to do any act in connection with his official position "except such as may be authorized by law." At common law such act might be bribery or extortion but both bribery and extortion implied evil and corrupt intent. The statute is remarkable in that under literal interpretation even to *ask* for compensation not authorized by law or to *consent* to receive such compensation or reward when freely offered for extraordinary exertions, becomes a felony. An honest official who receives a salary fixed by statute which was unconstitutional or who brings suit to test the validity of a statute would under such construction come under the statutory ban; an honest officer who is honored by his fellow citizens by valuable testimonial for services honorably performed might find himself a felon. It may be said that no prosecuting officer would bring criminal proceedings for such technical offense; no court would permit them and no jury would convict. It may be said with equal right that no court should impute to the Legislature the intent, even if it has the power, to make such innocent act a felony, and construction of a criminal

statute to include such acts is unreasonable if other construction is possible.

The defendant urges that when the statute is read in the light of its history it becomes evident that it was intended to apply only to bribery. Such construction would in our opinion unduly limit its language. Both sides agree that the statute was enacted to carry out the purpose of section 2 of article XIII of the Constitution of this State and must be read in connection with that section. The constitutional section was originally adopted by the People in 1874 as an amendment to the existing Constitution. It was formulated by the " Committee on Official Corruption " which reported that " the simple purpose of the proposed amendments is purity in office." Though the title of the section in our Constitution is "Acceptance of bribe by public officer a felony," its purpose was to secure more effective protection against misuse of public office for private purpose and its language and the language of section 1826 of the Penal Law should not be construed as limited to the common-law offense of bribery. It is hardly to be supposed that a constitutional amendment would have been proposed merely to insure that bribery should always be regarded as a felony. The language of section 1826 of the Penal Law is broad enough to cover any case where an incumbent of office wrongfully uses his office for private gain and we should not restrict that language beyond its plain intent. On the other hand, we may not disregard entirely the title of the constitutional provision showing that the prohibited offense is at least analogous to bribery and we should not by construction enlarge the language of a statute intended to cover corruption and impure conduct in office so that it will also include offenses committed under innocent mistake, even of law.

It is said that in statutory crime, the only criminal intent which need be shown is the specific intent to do the prohibited act. That may often be true yet in each case

it depends upon the construction which the court places upon the statute. (*Halsted* v. *State,* 41 N. J. L. 552.) Statutes in similar language have been construed as not precluding inquiry into intent. (*Cutter* v. *State,* 36 N. J. L. 125; *State* v. *Pritchard,* 107 N. C. 921.) A public officer may, of course, rightfully ask or receive his lawful compensation; the statute prohibits him from asking or receiving compensation or reward *"not authorized by law."* There can be no intent to do the prohibited act unless the officer knows that he is asking or receiving something " not authorized by law." In other connection these words might be construed as referring to statutory provisions only (*Brinckerhoff* v. *Bostwick,* 99 N. Y. 185), *i. e.,* that only where a statute expressly fixes salary or compensation, other reward may not be received. In this case the words must receive a broader construction if the purpose of the statute is to be effectuated. It applies alike to all officers regardless of whether their compensation is fixed by statute or ordinance or contract legally made. It does not attempt to fix what compensation or reward may lawfully be obtained; but it prohibits and makes criminal the asking or receiving of more than is lawful. Ordinarily ignorance of law can constitute no excuse or defense to criminal prosecution but here there can be no intent to do the prohibited act unless there is knowledge that the compensation or reward is more than is permitted in law. May we reasonably hold that the Legislature intended that knowledge of what reward or compensation is in fact authorized by law must in all cases be conclusively presumed though what constitutes lawful compensation may depend upon consideration of doubtful factors and of imperfectly formulated principles and rules?

Cases in which the courts have passed upon the proper construction of statutes where though the form is criminal the matter is civil (Bishop on Criminal Law [9th edition], vol. 1, section 291) or where for the protection of one class

an act which might be innocent has been made a misdemeanor, can furnish us no help in construing the present statute. Such cases are governed by different considerations. We do not pass here upon the meaning of section 855 of the Penal Law which makes extortion a misdemeanor. The statute under which this defendant was convicted is aimed against wrongdoing and corruption in office. It makes such wrongdoing a felony punishable with ten years' imprisonment. It deals with offense so serious that by constitutional provision that offense must be treated as a felony. The gist of the offense is the asking or receiving of money by an officer as compensation not authorized by law. From intent to commit the offense inference of corrupt and criminal intent follows sufficient to justify punishment. Faithlessness to a trust in itself is corrupt but honest mistake is not corrupt. There can be no intent to do the prohibited act unless the defendant knows that he is asking or receiving reward which is illegal. Legality or illegality is not written large upon the statute but may depend on varying circumstances and unwritten rules of common law. The jury has been instructed to convict if payment was made as compensation for services in legal effect covered by salary though it was the understanding that the salary should not include such compensation. It has been instructed that they may convict even though the defendant received the money believing that he had a right to receive the same. In construing this statute the rule that ignorance of the law does not excuse should not be stretched into a conclusive presumption of knowledge of the law in order to supply the element of criminal intent to do the prohibited act. In other cases, such as larceny or extortion, where specific intent is an element of the crime, ignorance of the law may be proven to show there was no such intent. (See *Cutter* v. *State, supra;* Bishop on Criminal Law, sections 291, 291a, 299.) It is plain that the Legislature must have intended that either a general criminal intent or a

specific intent to do the prohibited act must be shown before a public officer can be convicted as a felon. When the Legislature supplies only the test of whether an act is " authorized by law " and that test may be applied only by knowledge not only of relevant statutes but of relevant rules of common law, it would be unreasonable to hold that the Legislature intended that criminal intent must be found though the defendant made a mistake of law.

Ordinarily the Legislature may not be presumed to have passed a penal statute making an act a felony unless it believed that the prohibited act was vicious. Penal statutes should be construed accordingly to give effect to the legislative intent. The crime of receiving money " not authorized by law " is not committed unless the money is received with wrongful intent. That intent is shown when it appears that the public officer has received something which he knows that the law does not permit him to accept. The law is too often complicated and doubtful to permit us to hold that knowledge of the law must in such case be conclusively presumed so that the jury may convict where in fact there has been no corrupt or criminal intent and no intention to injure others or to do the prohibited act and no understanding that the defendant was receiving more than he legally might.

The judgments should be reversed and a new trial ordered.

HISCOCK, Ch. J., POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; CARDOZO, J., absent.

Judgments reversed, etc.