THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. WARREN CLEAVER BROWN, DEFENDANT-RESPONDENT.

Argued September 24, 1956—Decided October 29, 1956.

408

*Mr. David R. Brone,* Assistant County Prosecutor, argued the cause for the State (*Mr. Lewis P. Scott,* County Prosecutor, on the brief).

*Mr. Harry Miller* argued the cause for the respondent.

The opinion of the court was delivered by

HEHER, J. On May 16, 1956 the respondent was convicted by a jury of murder in the second degree on an indictment returned the prior February 8 charging that on April 17, 1951 he did "willfully, feloniously and of his malice, aforethought kill and murder Margaret Jones, also known as Margaret Brown." Judgment was arrested, before sentence, for want of "jurisdiction of the offense," it was found, because of the supposed bar of the statute of limitations; and the case is here by the State's appeal under *Article* VI, *Section* V, *paragraph* 1(*c*) of the 1947 *Constitution.*

The homicide occurred April 17, 1951, in a dwelling in Egg Harbor Township, Atlantic County, New Jersey, where the accused and the victim had cohabited together for eight or nine years. Immediately after the killing, the accused placed the body in a closet of the house, and it was there concealed until its fortuitous discovery in the early Fall of 1955, the accused continuing to live in the house meanwhile. "Murder, though it have no tongue, will speak!" When taken into police custody, on October 19, 1955, he confessed the killing and the concealment of the corpse. There was a brawl, he said, and he belabored the woman over the head with a broom handle. She fell to the floor and there remained, inert; he was soon asleep, and the next morning he found her dead. It was then that he made away with the body. He did not become a fugitive; and it is conceded there was nothing in his conduct that would toll the statute of limitations.

On November 3, 1955 the accused was indicted for manslaughter. The indictment charged a felonious killing of the deceased on April 18, 1950. It was *nolle prossed* Jan-

uary 10, 1956, as charging a crime barred by the statute of limitations, but in the order to that end Judge Cafiero directed that the "matter again be presented" to the grand jury "for reconsideration at an early date."

*N. J. S.* 2*A* :159–2 provided that "Except as otherwise expressly provided by law no person shall be prosecuted, tried or punished for any offense not punishable with death, unless the indictment therefor shall be found within 2 years from the time of committing the offense \* \* \*." Effective June 30, 1953, the period of limitation was enlarged to five years. *L.* 1953, *c.* 204.

The State says that "subsequent" to the return of the manslaughter indictment, it "learned of the true date of the killing, resulting in the present indictment for murder" and trial "on the basis of the homicide having occurred on April 17, 1951, a period of less than five years from the filing and entering of the present indictment." It maintains, and this is acknowledged to be the pivotal issue, that the "case comes within the statutory exclusion normally resulting in a bar to prosecution, because the offense for which the defendant was prosecuted and tried" was "punishable with death." The contention *contra* is that "murder in the second degree is a distinct and separate offense from murder in the first degree, carrying with it its own punishment," and the "punishment of the crime of second degree murder is barred by the statute of limitations."

The indictment for murder charged an offense "punishable with death" within the concept of *N. J. S.* 2*A* :159–2. Murder at common law is the unlawful killing of one person by another with malice aforethought, either express or implied, "the grand criterion which distinguishes murder from other killing," that is, any evil design in general, the dictate of a wicked, depraved and malignant heart; and it may be either express or implied in law. At common law as a general rule all homicide is malicious, and amounts to murder, unless where *justified* by the command or permission of the law; *excused* on the account of accident or self-preservation,

or *alleviated* into manslaughter, by being either the involuntary consequence of some act, not strictly lawful, or (voluntary) occasioned by some sudden and sufficiently violent provocation. Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act. And at common law all homicide is presumed to be malicious until the contrary "appeareth upon evidence." 4 *Blackstone's Com., sections* 224, 229, 233. See also *State v. Zellers,* 7 *N. J. L.* 220 (*Sup. Ct.* 1824); *Graves v. State,* 45 *N. J. L.* 347 (*E. & A.* 1883); *State v. Moynihan,* 93 *N. J. L.* 253 (*E. & A.* 1919); *State v. Lederman,* 112 *N. J. L.* 366 (*E. & A.* 1934); *Rex v. Oneby,* 2 *Ld. Raym.* 1485, 92 *Eng. Repr.* 465 (1898); *State v. McGuire,* 84 *Conn.* 470, 80 *A.* 761, 38 *L. R. A., N. S.,* 1045 (*Sup. Ct. Err.* 1911); *People v. Lytton,* 257 *N. Y.* 310, 178 *N. E.* 290, 79 *A. L. R.* 503 (*Ct. App.* 1931); *Com. v. York,* 9 *Metc. (Mass.)* 93 (*Sup. Jud. Ct.* 1893); 1 *Hale, P. C., p.* 45 (1680); 1 *Hawkins, P. C., c.* 31, *s.* 3 (1787); 3 *Inst., pp.* 47, 50; and 38 *L. R. A., N. S.,* 1054 *et seq.,* 1092 *et seq.* 1103; *Wharton's Criminal Law* (12*th ed.*), *sec.* 419.

▆▆ Thus, manslaughter is an offense distinct from and not a degree of murder. See *State v. White,* 41 *Iowa* 316 (*Sup. Ct.* 1875). Murder in the second degree is distinguished from manslaughter by the element of malice, essential to the former but not the latter. *State v. Guild,* 10 *N. J. L.* 163 (*Sup. Ct.* 1828). At common law murder is not divided into degrees. A distinction between express and implied malice has been found in the deliberate intent or formed design which is an element of express malice, but at common law there is no such difference in the grade of the offense; it is murder however the given state of mind may be categorized, a condition of mind ordinarily a matter of inference from the circumstances, and the penalty is death, although, says Blackstone, the punishment of murder and that of manslaughter were formerly one and the same, both having the benefit of clergy; but the privilege of exemption from

capital punishment was later taken away by statute from murderers through malice prepense. 4 *Blackstone's Com. section* 234.

All this reveals the essential quality of murder as a single offense, divided by the statute, *N. J. S.* 2A:113–1; 2A:113–2, into degrees, first and second, for the purpose of punishment alone, according to the gravity and heinousness of the felonious act, the moral obliquity that determines the difference between express and implied malice. *State v. Cooper,* 2 *N. J.* 540 (1949). These statutes have not altered the nature of murder at common law; they are concerned only with the character of the punishment; the degrees do not constitute separate and distinct crimes, but merely grades of the same offense. Murder in either of the statutory degrees is murder at common law.

Such was the holding of the Court of Errors and Appeals in the early case of *Graves v. State,* cited *supra*: the Legislature, "in declaring what shall constitute murder of the first degree and what murder of the second, created no new crimes, but merely made a distinction, with a view to a difference in the punishment, between the most heinous and the less aggravated grades of the crime of murder"; that which was "murder at the common law was, after the statute, still murder here, but the most flagitious species was designated as the highest degree and visited with the extreme penalty, while all others were declared to constitute a lower class and to be punishable accordingly"; the simplified form of indictment provided for a charge of "murder * * * in language sufficient to designate it"; and it was also provided, accordingly, that if the jury should find the accused "guilty of murder," the verdict should designate the degree, first or second; the statute "did not make murder of the first degree a separate and distinct crime from murder of the second, but murder of each grade, after the passage of the statute, continued to be, as it had theretofore been, the crime of murder"; and the indictment in the statutory form charges "murder," a "willful and felonious killing, by him, of the deceased, of his malice aforethought." The

degree upon conviction determines the punishment only, according to the circumstances.

See also *State v. Phillips,* 118 *Iowa* 660, 92 *N. W.* 876 (*Sup. Ct.* 1902) ; *State v. Gunn,* 89 *Mont.* 453, 300 *P.* 212 (*Sup. Ct.* 1931) ; *State v. Woodson,* 244 *Iowa* 1262, 59 *N. W. 2d* 556 (*Sup. Ct.* 1953), *certiorari* denied 347 *U. S.* 907, 74 *S. Ct.* 433, 98 *L. Ed.* 1065 (1953) ; *State v. Hutter,* 145 *Neb.* 798, 18 *N. W. 2d* 203 (*Sup. Ct.* 1945).

As noted in *State v. Cooper, supra,* a killing which constitutes murder at common law or under the statute is presumed to be murder in the second degree; and the burden is laid upon the State to establish circumstances rendering it murder of the first degree under the statute. In a word, the offense of murder remains as it was at common law before the statute; the distinction of degree has reference merely to a difference in punishment. The most perverse are punishable by death or life imprisonment, in the discretion of the jury; the less so in moral turpitude, by moderate punishment. But it is of the very nature of the statutory scheme that the jury adjudge the degree of guilt and thereby the character and degree of the punishment. See *State v. Greely,* 11 *N. J.* 485 (1953) ; *State v. Pontery,* 19 *N. J.* 457 (1955). "Murder" is a "technical term which denotes a distinct and definite crime at common law, * * *." *State v. Patriarca,* 71 *R. I.* 151, 43 *A. 2d* 54, 160 *A. L. R.* 387 (*Sup. Ct.* 1945). It "continues to be a capital offense until the final disposition of the indictment." *State v. O'Leary,* 110 *N. J. L.* 36 (*E. & A.* 1933).

Thus, the offense charged in the indictment is "punishable with death," and so it is an offense excluded from the operation of *N. J. S.* 2A :159–2. It cannot matter that the jury found the accused guilty of murder in the second degree. He was convicted of murder nevertheless; the degree had relation only to the penalty, which depended upon the circumstances of the killing, involving a function within the exclusive province of the jury. Were this not so, it would have been incumbent on the trial judge to exclude murder in the second degree from the jury's consideration and confine

the issue to murder of the first degree, an obvious corruption of the statutory policy placing the degree of guilt and the nature of the punishment in the hands of the jury. *State v. Cooper, supra.* And on the tendered hypothesis, would a verdict of murder in the first degree with life imprisonment be also within the ban of the pleaded statutory limitation?

The exception to the operation of the limitation, *N. J. S. 2A* :159–2, is to have a reasonable construction in keeping with the policy of the related statute defining murder as an offense punishable with death, in the discretion of the jury if the moral fault be of the degree sanctioning the extreme penalty, or life imprisonment as the alternative, or in measure less severe if the presumed degree of guilt has not been overcome.

The indictment here charged murder without specification of degree. This, according to *R. S.* 2 :188–11, which had provided that in any indictment for "murder or manslaughter," the "manner in which, or the means by which" the death of the deceased was caused need not be set forth, but it shall be sufficient in every indictment for murder to charge that the defendant did "willfully, feloniously and of his malice aforethought, kill and murder the deceased"; and in every indictment for manslaughter, to charge that the defendant did "feloniously kill and slay the deceased," now supplanted by *R. R.* 3 :4–3, in the selfsame terms. Note the separate classification of "murder" and "manslaughter," depending upon the presence or absence of malice. The indictment thereby laid to the accused murder punishable with death, depending upon the degree of moral perverseness established by the proofs, not murder in the first degree or the second degree in terms. The degree of culpability is determined by the jury alone, save that although the accused may not plead guilty to an indictment for murder, a plea of *non vult* or *nolo contendere* is permissible, but in that event the death sentence cannot be imposed; the sentence then shall be either life imprisonment or that imposed for murder in the second degree, *i. e.,* imprisonment for not

more than 30 years. *N. J. S.* 2*A*:113–3; 2*A*:113–4, formerly *R. S.* 2:138–3; 2:138–4.

 The question is in essence one of legislative intent. The significance of the statutory exception at issue here is revealed by its relation to the statutes defining murder and providing for its punishment. The sense of a law is to be gathered from its object and the nature of the subject matter, the contextual setting, and the statutes *in pari materia. Hackensack Water Co. v. Ruta,* 3 *N. J.* 139 (1949). A statute is to be construed as a whole with reference to the system of which it is a part. *Maritime Petroleum Corporation v. City of Jersey City,* 1 *N. J.* 287 (1949). And statutes upon cognate subjects may be considered in arriving at the legislative intention, though not strictly *in pari materia.* This principle is essential to give unity to the laws, and to connect them in a symmetrical system. *Modern Industrial Bank v. Taub,* 134 *N. J. L.* 260 (*E. & A.* 1946). The import of any word or phrase is to be gleaned from the context and statutes *in pari materia. Public Service Electric & Gas Co. v. City of Camden,* 118 *N. J. L.* 245 (*Sup. Ct.* 1937). Scholastic strictness of definition cannot be adopted if it prevents a "reasonable construction." *Wright v. Vogt,* 7 *N. J.* 1 (1951).

 While penal and criminal statutes are to be strictly read to avoid penalties by construction, and a statute of limitation is to be liberally interpreted in favor of repose and, corollarially, an exception to the general limitation is to be given a narrow scope, *United States v. Scharton,* 285 *U. S.* 518, 52 *S. Ct.* 416, 76 *L. Ed.* 917 (1932), the words of the enactment are to be accorded a rational meaning in harmony with the obvious intent and purpose of the law. Compare *Snyder v. State,* 204 *Ind.* 666, 185 *N. E.* 507 (*Sup. Ct.* 1933) ; *Com. ex rel. Dugan v. Ashe,* 342 *Pa.* 77, 19 *A.* 2d 461 (*Sup. Ct.* 1941). The history of the legislation and other statutes *in pari materia* "may weigh heavily upon the issue of the meaning to be given a criminal statute"; and the "common law meanings of words used may always be of importance in determining the exact meaning which

was intended to be conveyed." *Sutherland's Statutory Construction* (3d ed.), *section* 5608. See *People v. Clark,* 242 *N. Y.* 313, 151 *N. E.* 631 (*Ct. App.* 1926); *State v. Dorau,* 124 *Conn.* 160, 198 *A.* 573 (*Sup. Ct. Err.* 1938); *Snitkin v. United States,* 265 *F.* 489 (7 *Cir.* 1920).

The rule of strict construction will not justify an "unreasonable" interpretation; interpretation is the process by which the true intention of the law is ascertained and effectuated, and this means the reasonably probable intention as shown by the symbols of expression, read and evaluated in the light of the context and the other relevant considerations.

The County Court judge found determining significance in the use of the disjunctive "or" in the terms of the limitation, *N. J. S.* 2A:159-2, "* * * prosecuted, tried or punished * * *," as permitting the prosecution and trial, the operation of the limitation depending upon the verdict. But it is the "right to prosecute" that is barred by this provision; the statute "is aimed directly at the very right which the State has against the offender, the right to punish, at [*sic*] the only liability which the offender has incurred, and declares that this right and this liability are at an end." *Moore v. State,* 43 *N. J. L.* 203, 209 (*E. & A.* 1881). And the manifest legislative policy and purpose is not to be defeated by the ill-use of the conjunctive "and" or the disjunctive "or," so often considered convertible terms. The essential legislative intention cannot be made to depend on grammatical nicety or precision in terms. One could not be "punished" unless he were "prosecuted." See *Murphy v. Zink,* 136 *N. J. L.* 235 (*Sup. Ct.* 1947), affirmed *Id.,* 136 *N. J. L.* 635 (*E. & A.* 1948), Burling, J.

The order in arrest of judgment is reversed; and the cause is remanded with direction to impose sentence on the verdict as rendered and to enter judgment of conviction accordingly.

WACHENFELD, J. (dissenting). I would affirm the judgment below principally for the reason recited by Judge

Leonard at the trial level on the motion in arrest of judgment. The law as he states it, in my opinion, is clear, correct, and impressively expressed.

I agree with the majority when it says "the sense of a law is to be gathered from its object and the nature of the subject matter, the contextual setting, and the statutes *in pari materia*." I subscribe also to its pronouncement:

"While penal and criminal statutes are to be strictly read to avoid penalties by construction, and a statute of limitation is to be liberally interpreted in favor of repose and, corollarially, an exception to the general limitation is to be given a narrow scope, * * *."

How the majority can then jump from these basic interpretations to add something to the enactment in question in criminal procedure that was left out by the Legislature is beyond my comprehension.

*N. J. S.* 2A :113–2 distinguishes and defines the degrees of murder, first-degree murder being "murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which is committed in perpetrating or attempting to perpetrate arson, burglary, kidnapping, rape, robbery or sodomy." Second-degree murder is defined to be "any other kind of murder."

In addition to there being a difference in the crime itself as the elements are totally different, there is likewise a difference in punishment. *State v. Bunk,* 4 *N. J.* 461 (1950).

Moreover, the existence of separate elements and that facts warranting conviction of one degree do not necessarily warrant a conviction of the other differentiates second-degree murder, as an "offense not punishable by death," from the situation where the jury finds in the first degree but recommends life imprisonment. *N. J. S.* 2A :113–4. Clearly, in the latter situation the lesser degree of punishment is imposed as a pure act of clemency and not because the jury came to a factual conclusion not justifying the death penalty.

The statute of limitations provides:

"\* \* \* no person shall be prosecuted, tried or punished for any offense not punishable with death, unless the indictment therefor shall be found within 2 years from the time of committing the offense \* \* \*." (Subsequently enlarged to five years)

There are only three offenses in our law punishable by death: first-degree murder, kidnapping, treason, and the prisoner was not convicted of any of these.

A statute enlarging liberty is to be liberally construed, but a statute restricting liberty is to be strictly construed.

I would affirm the judgment below.

*For reversal*—Justices HEHER, OLIPHANT, BURLING and JACOBS—4.

*For affirmance*—Justice WACHENFELD—1.