685 A.2d 1379

STATE OF NEW JERSEY, PLAINTIFF, v. MICHAEL A. WALLACH, RICHARD E. SMITH, ROBERT E. REGELING AND ROBERT G. KINCAID, DEFENDANTS.

Superior Court of New Jersey
Law Division
Special Civil Part
Traffic Division Bergen County

Decided October 16, 1996.

94

*Jeal Sugarman,* Acting Assistant Prosecutor, for the State (*Charles Buckley,* Acting Prosecutor).

*Angelo R. Bianchi,* for defendants Smith and Regeling (*Bianchi & Bianchi,* attorneys).

*Daniel J. Cohen,* for defendant Wallach (*McElroy, Deutsch & Mulvaney,* attorneys).

*Craig W. Miller,* for defendant Kincaid (*Gallo, Geffner & Fenster, P.C.,* attorneys).

KOLE, J.A.D., Retired and Temporarily Assigned on Recall.

All of the defendants in this case who have been charged with violations of *N.J.S.A.* 39:4–75, driving overweight vehicles on intrastate bridges, have moved to dismiss the summonses against them. They claim that the posting of the maximum weight signs relating to the bridge involved herein had not been approved by the State Commissioner of Transportation, allegedly as required by *N.J.S.A.* 39:4–202, 39:4–8 and *Ufheil v. Boro. of Oradell,* 123 *N.J.Super.* 268, 302 *A.*2d 533 (App.Div.1973). The bridge, Glen Gray Road Bridge, had collapsed as a result of the crossing thereof by the last of a five-truck convoy on October 6, 1995.

The motions are denied. For the reasons that follow it is clear that no such approval is required.

On September 11, 1985, the Bergen County Bridge Engineer requested three new load or weight limit signs for the Glen Gray Road Bridge, a county bridge, one at each end of the bridge and one at the intersection of Ramapo Valley Road, which is also known as Route 202. The bridge is in Oakland. As a result, the Bergen County Board of Freeholders, on September 20, 1985, authorized the posting of such signs by resolution.

In 1985, the bridge weight statute, *N.J.S.A.* 39:4–75, required posting of maximum gross weight signs upon or immediately adjacent to the bridge in a conspicuous place. Despite there being no statutory requirement for such a sign at that time, Bergen County nevertheless authorized the posting of a sign at or near the intersection of Route 202 and Glen Gray Road.

As early as October 2, 1959, the Division of Motor Vehicles of the Bureau of Traffic Safety determined, in accordance with an informal opinion of the Attorney General's office, that the Director of Motor Vehicles had no responsibility, under *N.J.S.A.* 39:4–202 or 39:4–8, with respect to approval of posting of weight limit signs on bridges.

*N.J.S.A.* 39:4–202 provides that no resolution enacted or established "under authority of this article [Article 21 of Title 39]" shall be effective until submitted and approved by the director (later changed to Commissioner of Transportation), as provided in section 39:4–8. Article 21 deals with the powers of municipalities, counties and highway commissioners and sets forth what each of these entities are empowered to enact concerning motor vehicle regulations. *N.J.S.A.* 39:4–8 provides that no resolution or ordinance "concerning, regulating or governing traffic or traffic conditions" enacted by any body "having jurisdiction over highways" shall be effective unless approved by the director.

The 1959 Attorney General's opinion, followed by the Division of Motor Vehicles, determined that there was no provision in Title 39

concerning the powers of the county over its bridges. It pointed out that those powers were contained in Title 27, which relates to the construction, operation and maintenance of viaducts and bridges in the county, and requires the county to keep these facilities in repair and safe condition for public travel (*N.J.S.A.* 27:19–1); that *N.J.S.A.* 27:19–13 provides that the county free-holders shall make rules and regulations for the protection and use of such bridges and viaducts under its care and control; that the authority inherent in the freeholders to cause the posting of necessary signs results from a positive direction of Title 27; and that the Motor Vehicle Director had no control over such judgment and actions by them. The Attorney General's opinion concluded, as follows:

Therefore, it is obvious that there is no requirement that he approve any such rules and regulations, for as pointed out in your memorandum, the simple mechanics of the operation present an almost impossible situation wherein the Director would then approve a regulation over which he has no knowledge or background, and over which he has no control. Thus it follows that *R.S.* 39:4–8 and 39:4–202 do not control the situation.

Contrariwise, the enforcement of those regulations is a function of the Motor Vehicle Division for *R.S.* 39:4–75 and 76 provide penalties for the failure to observe those signs. This, however, is not really as paradoxical as it may seem. The passage of vehicles over roads and highways is the concern of the Director in his responsibility of the regulation of *traffic*, but the posting of the notices is the responsibility of the freeholders to promote the safety and proper maintenance of the bridges, an entirely different matter.

Therefore, you are advised that the Director should in no event take upon himself the responsibility of approving any such regulations or ordinances as are herein mentioned.

On September 18, 1972, the Attorney General's office, again in an informal opinion, affirmed the earlier 1954 opinion even with respect to posting speed limit signs on county bridges. He advised the Bureau of Traffic Engineering as follows:

I concur with the opinion given in [the 1954] memorandum that it is not the function of the State to post weights or speed limits on county bridges since this power is specifically reserved for the Freeholders of the County under *N.J.S.A.* 27:19–13 which provides that the Freeholders "shall make rules and regulations for the protection and use of the bridges and viaducts of a county under its care...."

Therefore, you are advised that the Bureau of Traffic Engineering should not take upon itself the responsibility of approving speed limits on county bridges.

On July 29, 1996, in connection with the present case, the Commissioner of Transportation, who had succeeded to the functions of the Motor Vehicle Director, reaffirmed the department's continued adherence to the foregoing Attorney General opinions, stating:

Counties in the State of New Jersey are empowered under *N.J.S.A.* 27:19–13 to make rules and regulations for the protection and use of the viaducts and bridges under county care and control. Weight limits, speed limits, etc. are forms of regulations. Pursuant to two (2) legal opinions expressed in 1959 and 1972 respectfully, regulations established pursuant to *N.J.S.A.* 27:19–13 are not subject to State review or approval. I have attached copies of . . . the opinions for your information and use.

In accordance with the above noted legal opinions, the Bureau of Traffic Engineering and Safety Programs has never issued approval for any ordinance, resolution, or regulation controlling traffic on any county bridge. All requests of this nature have been returned to the sender with a cover letter indicating that State approval was not necessary.

It was not until 1987 that the statute defendants are alleged to have violated, *N.J.S.A.* 39:4–75, was amended to provide expressly for the posting of bridge weight signs on a road. The amendment (*L.* 1987, c. 315, sec. 1) provided, among other things, that signs "warning persons driving motor vehicles that they are approaching a bridge with a maximum gross weight limit shall be posted in a conspicuous place upon the bridge or immediately adjacent thereto *and at the last safe exit or detour preceding the bridge."* [emphasis supplied]. The amendment, even though it relates to a sign on a road, also provided that the "signs required by this section shall be posted and maintained by the *entity which has jurisdiction over the bridge."* [emphasis supplied].

There is no doubt that the county has jurisdiction over the Glen Gray Road bridge. There is also no doubt that the Legislature intended to confirm the existing, long-standing, administrative interpretation of the State department that the signs at both the bridge and, now as well, on the road preceding the bridge constituting the last safe exit, be approved and posted by the county with respect to county bridges and by such other entities having jurisdiction of the bridge with respect to other bridges. Moreover, the amendment plainly shows that the Legislature intended

that further approval thereof by the State Commissioner of Transportation was not required, the authority of the county or other entity having jurisdiction over the bridge being sole and exclusive in this respect. *Cf. State v. Dorman,* 124 *N.J.Super.* 160, 305 *A.*2d 445 (App.Div.1973).

A court should place great weight on the long-standing interpretation given to the legislation in issue by the administrative agency to which its enforcement or administration is entrusted, particularly where, as here, it is in reliance on opinions of the Attorney General and has, in effect, received legislative approval. *Merin v. Maglaki,* 126 *N.J.* 430, 436–37, 599 *A.*2d 1256 (1992); *Malone v. Fender,* 80 *N.J.* 129, 137, 402 *A.*2d 240 (1979); *Peper v. Princeton University Bd. of Trustees,* 77 *N.J.* 55, 69–70, 389 *A.*2d 465 (1978); *Lane v. Holderman,* 23 *N.J.* 304, 323, 129 *A.*2d 8 (1957). Indeed, the conclusion that the legislation does not require State approval of a county resolution or other action relating to the posting of bridge weight signs with respect to a county bridge, is not only sound and reasonable but also accords with common sense. *See State v. Brown,* 22 *N.J.* 405, 415, 126 *A.*2d 161 (1956).

The case of *Ufheil Const. Co. v. Boro. of Oradell, supra,* 123 *N.J.Super.* at 268, 302 *A.*2d 533, on which defendants rely, is readily distinguishable. *Ufheil* involved a borough weight limitation ordinance applicable to *roads* only, which clearly is an "ordinance or resolution concerning, regulating or governing traffic or traffic conditions ... enacted by ... a body having jurisdiction over highways," that cannot be of any force or effect unless approved by the State Commissioner of Transportation. It thus plainly falls within the State approval requirement of *N.J.S.A.* 39:4–8(a), as held by *Ufheil.* With respect to bridges, on the other hand, the effect on traffic of a weight limitation, whether at the bridge or on a road, is, at best, tangential and collateral to traffic or traffic conditions.

Compare *State v. Dorman, supra,* 124 *N.J.Super.* at 161, 305 *A.*2d 445, (decided June 6, 1973), where two members of the

Appellate Division panel that earlier (March 20, 1973) had decided *Ufheil,* affirmed a determination that defendant was guilty of violating an ordinance prohibiting parking in a fire zone located in a shopping center. Defendant contended that under Title 39 the State had exclusive jurisdiction over traffic control and, therefore, any ordinance adopted by a municipality concerning traffic must be approved by the Division of Motor Vehicles, pursuant to *N.J.S.A.* 39:4–202. The court said:

> Defendant's argument ignores the clear mandate of *N.J.S.A.* 40A:14–53 ... and 40:48–2, 46, which grant to municipalities the authority to regulate traffic in parking yards and to regulate traffic in fire areas. Under these provisions, municipal control is exclusive, and impliedly no approval from the State is necessary....

*Dorman* is applicable to the instant case, where the Legislature, by the 1987 amendment to *N.J.S.A.* 39:4–75, clarified whatever doubt, if any, there might have been before the amendment, as to the exclusive and independent nature of the county's authority over the posting of maximum weight signs relating to bridges; and which essentially reaffirmed the State department's long-standing construction of that statute. Such posting and the resolution under which it was performed do not concern traffic or traffic conditions; nor was such resolution enacted under the authority of Article 21 of Title 39. Rather, it was enacted under Title 27. Thus, neither *N.J.S.A.* 39:4–8 nor 39:4–202, requiring State approval is applicable.

The pre–1987 resolution may be deemed to have been enacted or continued under the 1987 amendment to *N.J.S.A.* 39:4–75, which is part of Title 39. Thus, it would seem that the amendment falls within the precise language of *N.J.S.A.* 39:4–202 that requires approval by the Commissioner of Transportation of any county or municipal resolution, ordinance or regulation enacted "under the authority of this Article," Article 21 of Title 39. However, the 1987 amendment to *N.J.S.A.* 39:4–75 was intended to reaffirm the county's prior exclusive authority under Title 27 to post such weight signs and enact resolutions relating thereto.

Thus, even though such reaffirmed authority is in Article 21 of Title 39, the resolution cannot be considered to be subject to the State approval requirements of *N.J.S.A.* 39:4–202. This construction harmonizes "the individual sections" and reads "the statute in a way that is most consistent with the overall legislative intent." *Fiore v. Consol. Freightways,* 140 *N.J.* 452, 466, 659 *A.*2d 436 (1995).

The motions to dismiss are denied.