**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1004-19

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

EDWARD VICTOR ROBINSON,

 Defendant-Appellant.

_____

Argued October 14, 2021 – Decided November 3, 2021

Before Judges Hoffman, Whipple, and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 321-78.

Kevin G. Byrnes, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin G. Byrnes, on the briefs).

Hannah M. Franke, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Jill S. Mayer, Acting Camden County Prosecutor, attorney; Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Edward Victor Robinson appeals a September 16, 2019 Law Division order denying his motion to correct an illegal sentence. Considering the record and applicable legal principals, we affirm.

Defendant's Underlying Conviction and Sentence

Defendant was born in May 1961. On November 8, 1978, defendant, then a seventeen-year-old juvenile, and two co-defendants attempted to rob a man in Camden. When the victim attempted to drive away, defendant shot at the car with a handgun. The bullet struck the victim in the back of his head, fatally wounding him.

On December 5, 1978, defendant was waived from Juvenile and Domestic Relations Court to adult criminal jurisdiction for prosecution as an adult offender. Nine days later, a Camden County Grand Jury indicted defendant and two co-defendants for: murder, N.J.S.A. 2A:113-1[1] (count one); armed murder, N.J.S.A. 2A:151-5 (count two); unlawful possession of a firearm, 2A:151-41(a) (count three); conspiracy to commit armed robbery, N.J.S.A. 2A:98-1 (count

_____

[1] The offenses were committed prior to the effective date of the New Jersey Code of Criminal Justice (Code), N.J.S.A. 2C:1-1 to -98-4. See L. 1978, c. 98 (the Code's effective date was September 1, 1979).

four); attempted armed robbery, N.J.S.A. 2A:85-5 and 2A:141-1 (count five); and attempted armed robbery, N.J.S.A. 2A:151-5 (count six).

On March 19, 1979, defendant entered pleas of non vult[2] to armed murder, and guilty to unlawful possession of a firearm, conspiracy, and attempted armed robbery. The pleas were entered without a recommended sentence.

On May 10, 1979, the trial court sentenced defendant to a term of life imprisonment on the armed murder and concurrent lesser terms on the other three offenses. The sentencing judge noted defendant's extensive juvenile record that included eleven offenses, five probation violations, and detention seven times. The judge found defendant had "a very serious repetitive pattern." Finding the murder to be "a very heinous and senseless crime" that "climaxe[d] a youthful crime career," the judge determined that "defendant should receive the maximum sentence for punishment[,] for deterrence[,] for retribution[,] and to protect society from his further criminal activity." Co-defendant Dwayne Michael Thomas was sentenced to a term of twenty-nine to thirty years.

---

[2] Under the then-existing statutory scheme, a defendant was not permitted to plead guilty to an indictment for murder. State v. Brown, 22 N.J. 405, 414 (1956). Instead, a defendant could plead non vult or nolo contendere, in which case, "the sentence . . . shall be either life imprisonment or that imposed for murder in the second degree, i.e., imprisonment for not more than 30 years." Id. at 414-15 (citing N.J.S.A. 2A:113-3, -4).

A-1004-19

Defendant's ensuing efforts to reduce his sentence have thus far been unsuccessful. See State v. Robinson, No. 3968-78 (App. Div. May 30, 1980) (affirming defendant's sentence on direct appeal); State v. Robinson, No. 3731-83 (App. Div. Apr. 18, 1986) (affirming subsequent denial of post-conviction relief (PCR))[3]; State v. Robinson, Nos. A-2625-01 & A-4296-01 (App. Div. June 4, 2003) (affirming the denial of defendant's second PCR petition and his motion to withdraw his plea), certif. denied, 178 N.J. 30 (2003); State v. Robinson, No. A-3618-08 (App. Div. Feb. 17, 2010) (affirming denial of defendant's second motion to withdraw his plea)[4]; State v. Robinson, No. A-5906-08 (App. Div. May 20, 2010) (affirming denial of defendant's fourth PCR petition), certif. denied, 204 N.J. 40 (2010); State v. Robinson, No. A-3811-09 (App. Div. May 23, 2012) (affirming the denial of defendant's third plea withdrawal motion).

Defendant also moved for resentencing under N.J.S.A. 2C:1-1(d)(2). Relying on State v. Maguire, 84 N.J. 508 (1980), the trial court denied the motion on December 15, 1986.

---

[3] Fourteen years after the Appellate Division affirmed denial of defendant's first PCR petition, he moved for leave to file a petition for certification nunc pro tunc, but, on July 21, 2000, the motion was denied by the Supreme Court.

[4] On June 18, 2010, the Supreme Court dismissed for lack of prosecution defendant's petition for certification challenging the affirmance of the denial of his second plea withdrawal motion.

A-1004-19

In October 2016, defendant filed his fifth PCR petition, which the trial court construed as a motion to correct an illegal sentence. Defendant argued the life sentence was unconstitutional under Miller v. Alabama, 567 U.S. 460 (2012). The trial court denied the motion, determining that the sentencing judge considered mitigating circumstances and did not impose a mandatory life sentence. We remanded for the trial court to reconsider the petition in light of State v. Zuber, 227 N.J. 422, 438 (2017). State v. Robinson, No. A-3353-16 (App. Div. May 24, 2018) (slip op. at 3-4). On remand, the trial court again denied the motion to correct an illegal sentence. This appeal followed.

Because they are relevant to the issue raised in this appeal, we briefly review the serious crimes and innumerable disciplinary infractions defendant has committed while incarcerated.

Defendant's Crimes While Incarcerated

On October 27, 1988, while an inmate at Northern State Prison, defendant and another inmate held two civilian female staff members hostage, holding homemade knives to their throats. At one point, defendant shouted, "[g]et back, get back or I'll kill her." One hostage was held more than four hours and the other for almost seven hours.

An Essex County Grand Jury indicted defendant for kidnapping, terroristic threats, possession of an implement of escape, and conspiracy, and, on June 19, 1989, defendant pled guilty to all counts. On September 8, 1989, defendant was sentenced to a consecutive fifteen-year term, subject to a seven-year-and-six-month period of parole ineligibility on the kidnapping, a concurrent five-year term on the terroristic threats, and a concurrent ten-year term on the possession of an implement of escape.[5] This sentence, which was imposed for crimes committed when defendant was twenty-seven years old, significantly impacted his parole eligibility.

Defendant's Institutional Infractions While Incarcerated

In 2005, a three-member Parole Board panel found that defendant committed nearly ninety institutional infractions while incarcerated. Thirty of those infractions were deemed serious "and represent[ed] a continuous pattern of dangerous and otherwise extremely maladaptive behavior while incarcerated." Among those charges were an assault defendant committed at age twenty-three, two assaults he committed at age twenty-five, and the crimes he committed at age twenty-seven.

---

[5] For purposes of sentencing, the conspiracy count merged into the kidnapping count.

Following the kidnapping incident, defendant was cited for battery, attempted battery, threatening to kill someone, inciting a riot, and concealing a shank and a "hit list" of correctional staff in the hollowed-out area of a Koran.

On August 20, 1998, when defendant was thirty-seven years old, defendant was charged with: arson; creating a health, safety, or fire hazard; failing to obey an order; assault; disorderly or threatening behavior; damage or destruction of property; and inmate demonstration—stemming from defendant setting his cell on fire, refusing to come out of his cell, and then, when staff pushed the cell door open, striking a corrections officer in the jaw.

Notably, many of defendant's institutional infractions occurred <u>after</u> he turned twenty-seven years old. By way of example, while incarcerated in New Jersey, defendant committed nine institutional infractions when he was thirty-four years old, and ten infractions when he was thirty-five years old. He committed additional institutional infractions while incarcerated in Wisconsin under the Interstate Corrections Compact.

<u>The Denials of Parole</u>

Defendant was not sentenced to life without parole. He has twice been considered for and denied parole. Each time, a lengthy month future eligibility term (FET) was imposed.

A-1004-19

Defendant initially became eligible for parole in 2005, when he was approximately forty-four years old.[6] Based on defendant's record, a Parole Board panel concluded there was "no evidence . . . that would indicate a positive evolution in [defendant's] behavior" as he "progressed through adolescence, young adulthood and into adulthood." The Board panel found that incarceration had not decreased defendant's "desire to control and victimize others." It noted a "deeply disturbing[,] violent[,] and disruptive institutional history that ha[d] forced New Jersey Correctional authorities" to relocate him to out-of-state facilities "numerous times." The panel added that defendant remained "unable to understand [his] criminal personality[,] develop adequate insight into the

_____

[6] The parole statute applicable to defendant's 1978 crimes, N.J.S.A. 30:4-123.51(b), repealed by L. 1979, c. 441, § 27 (1980), had provided that an inmate sentenced to life imprisonment without a period of parole ineligibility is eligible for parole after serving twenty-five years, less commutation credits and work credits. When that statute was repealed by the Parole Act of 1979, N.J.S.A. 30:4-123.45 to -69, the Legislature provided that the prior law would be "continued in effect" for inmates, such as defendant, serving life sentences, N.J.S.A. 30:4-123.51(j). Trantino v. N.J. State Parole Bd., 166 N.J. 113, 125 (2001), modified, 167 N.J. 619 (2001). According to the State Parole Board's Parole Eligibility Table, defendant became eligible for parole after serving sixteen years, six months, and eighteen days, after applying commutation credits but no work credits or minimum custody credits. Maximum possible work credits would reduce this period by an additional 916 days. For a defendant sentenced at age seventeen, this is hardly life without parole or its practical equivalent, even if defendant earned no work credits or minimum custody credits.

A-1004-19

nature of" or "address the causes of [his] criminal behavior," "accept genuine responsibility" for it, or show remorse, and he "demonstrated a minimal interest in participating in institutional programs."

On February 8, 2006, the State Parole Board denied parole and set a 240-month FET. We affirmed the parole denial and the FET. Robinson v. State Parole Bd., No. A-3797-04 (App. Div. July 13, 2007).

In 2016, defendant was again denied parole and a 200-month FET was set, due to defendant's "lack of satisfactory progress in reducing [his] likelihood of future criminal behavior." The Board panel noted that defendant committed four institutional infractions since the previous parole hearing, including two assaults of inmates. The Board panel further noted that defendant's "violent . . . actions were as an adult and could no longer be blamed on the indiscretions of a young man." The Board panel concluded that defendant needed "[m]ore work . . . done . . . to understand the underlying motivations" for his anti-social actions and violent, criminal behavior "when placed in certain situations . . . ." There is no indication in the record that defendant appealed the second parole denial and FET.

After applying appropriate commutation credits and projecting further reductions due to potential earned minimum custody and work credits, defendant

9

is projected to be eligible for parole in April 2025, when he will be nearly sixty-four years old.

This Appeal

Defendant argues that his sentence is unconstitutional. He seeks resentencing, claiming his life sentence for an offense committed when he was a juvenile is unconstitutional when imposed without consideration of the juvenile sentencing factors enumerated in Miller, 567 U.S. at 477-78. Relying on Roper v. Simmons, 543 U.S. 551 (2006), and Zuber, 227 N.J. at 438, defendant argues scientific research now reveals that the brains of juveniles are still developing, and they are more susceptible to impulsive behavior and peer pressure. Roper, 543 U.S. at 578. Defendant contends that due to their undeveloped mental, emotional, and psychological capacities, juveniles do not have the same degree of culpability as adults. Additionally, there is "a greater possibility . . . that a minor's character deficiencies will be reformed." Id. at 570. While we recognize that scientific research has shown that "[t]he development and maturation of the prefrontal cortex" is not "fully accomplished," until at least "the age of 25 years," Mariam Arain et al., Maturation of the Adolescent Brain, 9 Neuropsych. Disease and Treatment 449, 459 (2013), we are unpersuaded that defendant's sentence, even as impacted by

10

the denials of parole and FETs, is unconstitutional, considering defendant's subsequent crimes and institutional infractions.

As we explained in State v. Tormasi, 466 N.J. Super. 51 (App. Div. 2021):

> In Zuber, the Court extended the holding of Miller to juveniles who receive a "lengthy, aggregate sentence that amounts to life without parole." 227 N.J. at 450. The Court held that when a juvenile is tried as an adult and is subject to a lengthy sentence that is "the practical equivalent of life without parole," the sentencing court must consider the Miller factors in addition to the statutory aggravating and mitigating sentencing factors. Zuber, 227 N.J. at 429, 445-47, 450. The Court did not preclude the possibility of a de facto life term but instructed that few juveniles should receive one because "it is only the 'rare juvenile offender whose crime reflects irreparable corruption.'" Id. at 451 (quoting Miller, 567 U.S. at 479-80).

> The Court did not define a de facto life term by any specific length and rejected the use of life-expectancy tables in deciding whether a lengthy term is effectively a life term. Id. at 450. The Court instructed sentencing courts to consider "the real-time consequences of the aggregate sentence" and held that the aggregate terms at issue in that consolidated case— 110 years with a 55-year parole-bar and 75 years with a 68-year and 3-month parole-bar—were the functional equivalent of life terms. Id. at 447, 449, 453.

> The Court suggested the possibility that a lawfully imposed sentence of life, or the functional equivalent of life, may later be rendered unconstitutional by subsequent facts that establish reform and rehabilitation before expiration of the parole-bar. Id. at 451-52. A defendant receiving such

11

a sentence might "ask the court to review factors that could not be fully assessed when he was originally sentenced—like whether he still fails to appreciate risks and consequences, or whether he may be, or has been, rehabilitated." Id. at 452 (citing Miller, 567 U.S. at 477).

[Id. at 64.]

The holding in Miller does not apply to defendant because his custodial term is not the functional equivalent to a life-without-parole sentence. See id. at 66; State v. Bass, 457 N.J. Super. 1, 13-14 (App. Div. 2018). He has twice been considered for and denied parole based largely on his criminal and institutional infraction record while incarcerated as an adult, much of which occurred after he reached twenty-seven years old.

Unlike some inmates who avoid further criminal behavior, comply with institutional requirements, participate in programs, and exhibit signs of rehabilitation and maturation, defendant has exhibited no such progress while incarcerated. His record hardly bespeaks rehabilitation or maturation. Defendant's abysmal conduct while incarcerated has resulted in a fifteen-year consecutive sentence, the denial of parole, and two lengthy FETs. Defendant's offenses committed as a juvenile, coupled with his subsequent crimes, gang activity while incarcerated, and institutional infractions committed as an adult, led the 2016 Board panel to conclude that a 200-month FET was appropriate

12

"due to [defendant's] lack of satisfactory progress in reducing the likelihood of future criminal behavior."

Defendant will once again be eligible for parole in April 2025 if he earns projected commutation and work credits. At that time the Parole Board will consider his suitability for parole, including his efforts to rehabilitate himself and behavior since the last parole hearing. See Tormasi, 466 N.J. Super. at 68, 70; Bass, 457 N.J. Super. at 14. "In undertaking that process, the Parole Board is required to consider the twenty-three non-exclusive factors enumerated in N.J.A.C. 10A:71-3.11(b), including the results of an 'objective risk assessment instrument,' N.J.A.C. 10A:71-3.11(b)(23)." Tormasi, 466 N.J. Super. at 68.[7] The Parole Board will consider defendant's: "[a]djustment to . . . incarceration," N.J.A.C. 10A:71-3.11(b)(4); "[p]articipation in institutional programs," N.J.A.C. 10A:71-3.11(b)(8); "[d]ocumented changes in attitude toward self or others," N.J.A.C. 10A:71-3.11(b)(11); "[m]ental and emotional health," N.J.A.C. 10A:71-3.11(b)(13); and "[s]ubsequent growth and increased maturity of the inmate during incarceration," N.J.A.C. 10A:71-3.11(b)(24).

---

[7] Tormasi refers to "twenty-three" non-exclusive factors, but the twenty-fourth factor, pertaining to an inmate's growth and maturity during incarceration, was added to N.J.A.C 10A:71-3.11(b), and made effective shortly after Tormasi was decided. 53 N.J.R. 250(c) (Feb. 16, 2021).

A-1004-19

"[T]he opportunity for parole provides a meaningful opportunity at release for purposes of the Eighth Amendment." Tormasi, 466 N.J. Super. at 67-68. As we have noted, defendant did not appeal his last parole denial and FET. If defendant is again denied parole, he may appeal that decision to this court. Acoli v. N.J. State Parole Bd., 224 N.J. 213, 232 (2016).

Finally, defendant did not provide evidence of rehabilitation, maturation, or reform to the trial court or to this court. Absent such evidence, and considering the length of defendant's parole ineligibility, his conduct while incarcerated, his unexpired FET, and parole eligibility in April 2015, the Federal and New Jersey constitutions do not require resentencing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1004-19